**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello**

Civil Action No. 22-cv-00740-CMA-MDB

PORTIA ADAMSON,

     Plaintiff,

v.

VALKSWAGEN GROUP OF AMERICA, INC., *d/b/a* Audi of America, Inc., and
AUDI COLORADO SPRINGS,

     Defendants.

---

**ORDER OVERRULING OBJECTIONS AND AFFIRMING THE RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

---

This matter is before the Court on the January 12, 2023 Recommendation of

United States Magistrate Judge (Doc. # 55), where in Magistrate Judge Maritza

Dominguez Braswell recommends that this Court grant Defendant Volkswagen Group of

America, Inc. d/b/a Audi of America, Inc.'s ("AOA") "Rule 12(b)(1) and 12(b)(6) Motion to

Dismiss the Complaint" (Doc. # 28), in which Defendant Audi of Colorado Springs

("ACS") joined (Doc. # 29). Plaintiff Portia Adamson timely filed an Objection to the

Recommendation (Doc. # 58), and Defendants AOA and ACS responded (Docs. ## 59,

60). For the following reasons the Court affirms and adopts Judge Dominguez

Braswell's Recommendation as an order of this Court.

**I.       BACKGROUND**

The factual background of this case is set out at length in Judge Dominguez Braswell's Recommendation, which the Court incorporates herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Accordingly, this Order will reiterate only the facts necessary to address Ms. Adamson's Objection to the Recommendation. The Court takes the following well-pleaded facts from Ms. Adamson's Complaint (Doc. # 1) and assumes them to be true for purposes of reviewing the Motion to Dismiss. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

On October 18, 2019, Ms. Adamson entered into a Closed End Motor Vehicle Lease (the "Lease") for a 2019 Audi, A5 Sportback (the "Audi" or the "leased vehicle"). (Doc. 1 at ¶ 49.) She paid $450 for a purchase option that would allow her to buy the Audi, subject to certain restrictions, either mid-Lease or at the end of the Lease. (*Id.* at ¶¶ 35-38, 49-56.) The purchase option states:

> **Option to Purchase Vehicle**. You have the option to buy the Vehicle at any time from a party designated by us. If you do, you agree to re-register and re-title the Vehicle in your name no later than 30 days from the time you purchase it. If you fail to do so, we reserve the right to cancel the registration. Before the scheduled lease end, the price will be the Adjusted Lease Balance (see Item 24) plus the Item 9 Purchase Price minus the Item 7D Residual Value. At the scheduled lease end, the price will be the Item 9 Purchase Price. At either time, you must also pay the Additional Amounts Due and we will apply the Additional Credits to the amount you owe (see Item 25(s)). Under this Lease, you will only be considered to have purchased the Vehicle if we assign the Vehicle's title directly to you.

(Doc. # 28-1 at ¶ 25(e).) Further, the Lease states that the lessors are the "sole owners of the Vehicle" (*Id.* at ¶ 25(n)), and the lessee "may not assign the Lease or transfer the Vehicle without [the lessors'] prior written permission" (*Id.* at ¶ 25(m)).

Sometime later Ms. Adamson realized that the market for used Audis was strong. (Doc. 1 at ¶ 52–53.) She visited "ACS to inquire about it buying out her lease and/or giving her a fair trade on a new Audi." (*Id.* at ¶ 53.) Ms. Adamson "learned that Defendants would not allow third party funds to purchase and/or buy out her lease and that Defendants would only allow an Audi dealership to buy out the lease." (*Id.* at ¶ 54.) "Subsequently," Ms. Adamson attempted to determine the buyout price by logging into her on-line Audi account and clicking the "Payoff" button. (*Id.* at ¶ 55.) However, the website advised that she needed to go to the dealership to get this information due to "'legal and regulatory' issues." (*Id.*) Ms. Adamson alleges that consequently, she was "left with only one method to exercise her [purchase] option – to sell it to Defendant ACS for an amount that was $3,000 below average wholesale value." (*Id.* at ¶ 56.)

Based on this series of events Ms. Adamson alleges that Defendants conspired to usurp "lessee equity/appreciation" in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. (*Id.* at ¶¶ 69–70, 72, 81.) In other words, recognizing that used cars were in short supply, and thus, were commanding higher-than-usual prices, Ms. Adamson wanted to sell her leased vehicle at market-value to a buyer other than an Audi dealership. However, because she lacked sufficient funds herself, she required third-party financing to buy out her Lease. Ms. Adamson contends Defendants frustrated her efforts by prohibiting the use of third-party funds to buy out leases, offering to buy out the Lease themselves, and withholding the payoff amount unless she

visited the dealership.[1] (*Id.* at ¶¶ 68–70.) According to Ms. Adamson, Defendants thereby ensured that formerly leased Audis are directed only to dealerships, resulting in fixed prices and unreasonably restrained trade in the used Audi market. (*Id.* at ¶¶ 68–70, 76–78, 81–88, 116–24.) As Ms. Adamson puts it, "[t]he crux of [her] complaint is that the Defendants conspired (mid-stream) to eliminate her ability to freely market her vehicle to realize the value between the vehicle's fair market value and her set early termination buyout option." (*Id.* at ¶ 75.) Ms. Adamson purports to bring this action on behalf of a class of

> consumer lessees of vehicle [sic] manufactured by the Defendant
> manufacturers who entered into the lease in the United States between
> October 18, 2019 through current day who could not realize the fair
> market value of their buyout option and those who were able realize the
> fair market value of their buyout option but who incurred additional costs
> related to retitling the vehicle in their name immediately before resale.

(*Id.* at ¶ 102.)

On June 17, 2022, Defendant AOA, joined by Defendant ACS (Doc. # 29), filed the instant Motion to Dismiss (Doc. # 28). Judge Dominguez Braswell issued her Recommendation on January 12, 2023. (Doc. # 55.) Ms. Adamson timely filed an Objection (Doc. # 58), Defendants Responded (Docs. ## 59, 60), and the matter is now ripe for review.

---

[1] In her Complaint Ms. Adamson defines "buyout price" as a "set amount of money, outlined and agreed upon at the outset of the lease." (Doc. # 1 at ¶ 35.) Her lease contained two buyout prices, one for mid-lease and another for purchase at the end of the lease. (*Id.* at ¶ 37.) However, she does not define "payoff." Based on the use of these two phrases in Ms. Adamson's Complaint, Response, and Objection, the Court presumes that these two phrases are interchangeable. *See generally* (Docs. ## 1, 48, 55.)

## II.    <u>LEGAL STANDARDS</u>

Defendants present various arguments for dismissal of Ms. Adamson's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See generally* (Doc. # 28.) However, Judge Dominguez Braswell's Recommendation, and the Objection thereto, focuses on two related grounds for dismissal—lack of Article III standing, and lack of antitrust standing. (Doc. # 55 at 8–18.) A motion to dismiss for lack of Article III standing challenges the Court's subject matter jurisdiction and, therefore, is properly reviewed under Rule 12(b)(1). See *Colo. Envtl. Coalition v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004). Antitrust standing, on the other hand, is not "jurisdictional." *See, e.g., Gerlinger v. Amazon.com Inc., Borders Group, Inc.*, 526 F.3d 1253, 1256 (9th Cir. 2008) ("Lack of antitrust standing affects a plaintiff's ability to recover, but does not implicate the subject matter jurisdiction of the court."); *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 107–08 (D.C. Cir. 2002) ("Unlike constitutional standing, this court's jurisdiction does not turn on antitrust standing."). Therefore, dismissal for lack of antitrust standing is reviewed under Rule 12(b)(6). *See Tal v. Hogan*, 453 F.3d 1244, 1253 (10th Cir. 2005).

## A.    REVIEW OF A MAGISTRATE JUDGE'S RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." In conducting the review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to

the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). "In the absence of timely objection, the district court may review a magistrate [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.")).

In order to be properly made and, therefore, to preserve an issue for *de novo* review by the district judge, an objection must be both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059–60 (10th Cir. 1996). An objection is proper if it is specific enough to enable the "district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.* at 1059 (internal quotation marks omitted).

## B.   FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

Dismissal pursuant to Fed. R. Civ. P. 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over the claims for relief asserted in the complaint. "The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008). Generally, a Rule 12(b)(1) motion may take two forms: a facial attack or a factual attack. *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995) *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001). A facial attack looks only to the factual allegations of the complaint in challenging the court's jurisdiction. *Id.* at 1002. By contrast, a factual attack "may go beyond allegations

contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Id.* at 1003; *see also New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) ("A Rule 12(b)(1) motion can challenge the substance of a complaint's jurisdictional allegations in spite of its formal sufficiency by relying on affidavits or any other evidence properly before the court.").

## C.   FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of [a] plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, the Court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d

1259, 1262 (10th Cir. 1998). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and brackets omitted).

### III.   <u>DISCUSSION</u>

### A.   THE RECORD BEFORE THE COURT

As an initial matter Ms. Adamson and Defendant AOA disagree on whether Defendants have mounted a facial or a factual 12(b)(1) attack of Ms. Adamson's Complaint. *Compare* (Doc. # 58 at 3), *with* (Doc. # 60 at 9.) As discussed above, the distinction determines both the record before the Court and whether factual allegations in the complaint are presumed true. A facial attack "questions the sufficiency of the complaint," and when "reviewing a facial attack . . . a district court must accept the allegations in the complaint as true." *Holt*, 46 F.3d at 1002. In contrast, when reviewing a factual attack, the Court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule (12)(b)(1)." *Id.* at 1003.

Ms. Adamson argues that "the Magistrate recognized . . . that Defendants were making a 'factual' attack on Plaintiffs' [sic] complaint." (Doc. # 58 at 3.) In support of this assertion, Ms. Adamson cites to Judge Dominguez Braswell's recitation of the legal standards governing 12(b)(1) factual attacks, as well as to a footnote in which Judge Dominguez Braswell recognized that Plaintiff attached a declaration to her Response to Defendants' Motions to Dismiss. (*Id.* at 3, n.2 (citing Doc. # 55 at 5 n.1.)) However, a

recitation of a legal standard and an acknowledgement of an attachment does not equate to a holding.

To determine whether Defendants mounted a facial or a factual attack on Ms. Adamson's Complaint, the Court reviews the Motion itself to see if it looks only to the factual allegations of the complaint, or "go[es] beyond allegations contained in the complaint and challenge[s] the facts upon which subject matter jurisdiction depends." *Holt*, 46 F.3d at 1002–03. The Motion cites to several documents in addition to the Complaint. These include Ms. Adamson's Lease (Doc. # 28-1), and several news articles (Docs. ## 28-2, 28-3, 28-4, 28-5, 28-6, 28-7, 28-8). However, reference to these documents does not transform Defendants' otherwise facial 12(b)(1) attack into a factual one. Both the Lease and the news articles are "incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009); *see* (Doc. # 1 at ¶¶ 14, 29, 33 n.1, 35–42, 48 n.2, 49, 53, 57, 73 n.3, 96 n.4, 97 n.5, 98 n.6, 110 n.7.) The Lease is particularly "central to the plaintiff's claims," and none of the documents were challenged as inauthentic. *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *accord Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013). Thus, these documents are properly considered part of the pleadings which may be challenged in a facial 12(b)(1) motion to dismiss. *Holt*, 46 F.3d at 1002–03.

Therefore, the Court determines that Defendants mounted a **facial** attack against the Court's subject matter jurisdiction, arguing that Plaintiff lacks Article standing. Although the Recommendation could have been clearer, the Court concludes that

Judge Dominguez Braswell's review of the Motion to Dismiss correctly "accept[ed] the allegations in the complaint as true" and declined to consider affidavits or other materials outside the pleadings—including the declaration from Jonathan Murphy, PhD, (Doc. # 48-1), dated July 25, 2022, which Plaintiff attached to her Response to the Motion to Dismiss. *Holt*, 46 F.3d at 1002–03. Further, any facts contained within Mr. Murphy's declaration or other documents Ms. Adamson attached to her Response, are not properly before the Court at this stage of the litigation because plaintiffs "cannot amend [the] complaint by adding factual allegations in response to" a motion to dismiss. *Abdulina v. Eberl's Temporary Servs.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015) (citing *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995)).

The Court notes that on March 13, 2023, Ms. Adamson filed a Motion for Leave to File Reply in Support of Objections to Magistrate Recommendations (Doc. # 61) and attached her proposed Reply (Doc. # 61-1). In this motion Ms. Adamson argues that good cause exists to allow her to reply because Defendants waived any argument that they mounted a facial, rather than factual, 12(b)(1) attack. (Doc. # 61 at 2–3.) The Court denies this Motion. As discussed above, Judge Dominguez Braswell did not hold that Defendants' 12(b)(1) arguments went "beyond [the] allegations contained in the complaint," and properly assessed Defendants' Motion as a facial attack. Therefore, there was no argument for Defendants to waive. Further, as Ms. Adamson—not Defendants—is the objecting party, her assertions that "[a]rguments raised for the first time in objections are deemed waived," are misplaced. (Doc. # 61 at 3 (citing *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996)).

**B.    ARTICLE III STANDING**

To establish standing under Article III of the United States Constitution, a plaintiff must allege, among other things, an injury that is "concrete and particularized" and "actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "To be 'concrete,' an injury must be 'real' rather than 'abstract.'" *Laufer v. Looper*, 22 F.4th 871, 876 (quoting *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1190 (10th Cir. 2021)). Further, "[a]n alleged future injury is sufficiently imminent 'if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Id.* (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

In her Recommendation, Judge Dominguez Braswell first concludes that Ms. Adamson's claims against Defendants should be dismissed for lack of Article III standing because Plaintiff has failed to plead injury-in-fact resulting from Defendants' alleged scheme. (Doc. # 55 at 8–10.) Specifically, Judge Dominguez Braswell reasons that because Plaintiff's Complaint contains no allegations that she took any steps to secure third-party funds, she has not pleaded concrete plans to realize the fair market value of her leased vehicle. (*Id.*) Third-party funds are central to Ms. Adamson's claims because she specifically alleges that it was her lack of cash on hand—in other words, her need for third-party funds to buy out the Lease—coupled with Defendants' refusal to allow third-party funds, which prevented her from being able to exercise the Lease's buyout option. (Doc. # 1 at ¶¶ 3, 41–43, 54, 57–59, 64, 70, 74–90, 93–95, 118–19.) Thus, analogizing to *Laufer v. Looper*, 22 F.4th 871 (10th Cir. 2022), Judge Dominguez Braswell determined that Ms. Adamson pleaded, at most, that she inquired about her

purchase option, but not that she made "the type of concrete plans required for injury-in-fact." (Doc. # 55 at 10.)

Ms. Adamson objects to Judge Dominguez Braswell's Article III holding. As an initial matter, Ms. Adamson makes two arguments which attempt to counter issues not discussed in the Article III section of the Recommendation. These include Ms. Adamson's contentions that (1) the Recommendation fails to distinguish between assignment of the Lease during its pendency, from "assignment of property rights obtained when the lease is going to be paid off"; and (2) "[t]he Court's conclusion that the current owner of the Audi, and not the lessee, is entitled to appreciation incurred is not [sic] unsupported and contrary to law." (Doc. # 58 at 6.) Because these arguments challenge Judge Dominguez Braswell's holding regarding antitrust standing, the Court will assess them in Section III.C below.

The only remaining argument regarding Article III standing is Ms. Adamson's assertion that the Recommendation misunderstands her Complaint by failing to appreciate that by "thwarting" her attempt to "buy[] out her lease" (brackets in Objection), she was prevented from exercising "the benefit of market participation, and . . . the Appreciation Equity in her lease." (*Id.* at 5.) Ms. Adamson argues it is this inability to participate in the market that is the "crux" of her case. (*Id.* at 5–6.)

The Court agrees with Judge Dominguez Braswell's analysis of Article III standing. When read carefully and sequentially, as Judge Dominguez Braswell did, Ms. Adamson's Complaint actually alleges that she

(1)   "went into ACS to inquire about **it** buying out her lease and/or giving her a fair trade on a new Audi,"[2] (Doc. # 1 at ¶ 53) (emphasis added);

(2)   was told that "Defendants would not allow third party funds to purchase and/or buy out her lease and that Defendants would only allow an Audi dealership to buy out the lease," (*id.* at ¶ 54);

(3)   received an offer for the leased vehicle from the dealership which was below market value, *see* (*id.* at ¶ 56); *see also* (Doc. # 48 at 12); and

(4)   "[s]ubsequently" was unable to ascertain her current buyout price via her online Audi account and was directed to visit a dealership, (Doc. # 1 at ¶ 55).

Ms. Adamson's Complaint alleges no further action.[3] For example, it does not allege that she returned to the dealership to obtain the buyout price she was unable to get online, or that she took any steps to inquire about, or secure, third-party financing. *See* (Doc. # 55 at 9–10.) Ms. Adamson asks the Court to take "judicial notice" that "one cannot obtain third party funds or ascertain what is a 'fair trade' without first obtaining a payoff." (Doc. # 58 at 5.) However, the inconvenience of having to go in person to a dealership to obtain that payoff number does not create concrete injury sufficient to establish Article III standing. *Laufer*, 22 F.4th at 876.

---

[2] The Court notes that in her Objection, Ms. Adamson subtly alters this quote in an apparent attempt to construe her factual allegation as pleading that she went to ACS to attempt to buy out the lease **herself**. *Compare* (Doc. # 1 at ¶ 53), *with* (Doc. # 58 at 5.)

[3] In Ms. Adamson's Response (Doc. # 48 at 12), and in her Objection (Doc. # 58 at 4–5), she appears to imply that "she went to a Defendant dealer to obtain the payoff" **after** she attempted to figure out the payoff number via her online account. However, the plain language of her Complaint indicates that she went in person to ACS prior to logging into her online account. (Doc. # 1 at ¶¶ 53–55.)

As Judge Dominguez Braswell did, the Court finds *Laufer* and similar Americans with Disability Act ("ADA") "tester" cases, instructive despite some distinguishing factors. 22 F.4th at 877–78. In *Laufer*, the plaintiff had viewed the online reservation system of a hotel in Colorado and alleged that this system did not comply with ADA requirements. *Id.* at 874–75. Ms. Laufer argued, the hotel had "infringed her 'right to travel free of discrimination and deprive[d] her of the information required to make meaningful choices for travel.'" *Id.* at 874. Further, Ms. Laufer alleged she visits Colorado "approximately once a year" and "intend[s] to travel all throughout the State." *Id.* at 875. However, the United States Court of Appeals for the Tenth Circuit determined that, because Ms. Laufer had not alleged she had actual, concrete plans to travel to Colorado, she had not alleged injury-in-fact sufficient to establish Article III standing. *Id.* at 876–83.

Like Ms. Laufer's initial inquiries into the hotel's reservation system, Ms. Adamson took initial steps to join the market for used Audis. But, similar to Ms. Laufer's lack of concrete travel plans, Ms. Adamson's Complaint does not allege she took the steps necessary to make concrete plans to sell her leased vehicle. Thus, Ms. Adamson's alleged harm of nonparticipation in the used Audi market (Doc. # 58 at 5), is speculative. *Cf. Laufer*, 22 F.4th at 876 (explaining that injury sufficient for Article III standing must be "certainly impending, or there [must be] a substantial risk that the harm will occur."). Although the Court presumes the truth of Ms. Adamson's interest in selling her vehicle, and recognizes she is not a "tester"—or in Ms. Adamson's words, a "litigation tourist" (Doc. # 58 at 4)—the Court concludes *Laufer's* discussion of Article III

standing supports Defendants' arguments for dismissal. 22 F.4th at 876–83. Therefore, under *de novo* review, the Court concludes it would reach the same conclusion as Judge Dominguez Braswell that Ms. Adamson has not demonstrated sufficient injury-in-fact for Article III standing and Defendants' Motion to Dismiss should be granted.

## C.   ANTITRUST STANDING

In the alternative, Judge Dominguez Braswell's Recommendation also assesses Defendants' argument that Ms. Adamson has not sufficiently plead antitrust standing. (Doc. # 55 at 10–17.) An antitrust plaintiff faces an additional, "more rigorous" standing requirement: she must demonstrate "antitrust standing," which includes a showing of "antitrust injury." *Tal*, 453 F.3d at 1253. Antitrust injury is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Id.* (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). As the "Sherman Act was designed to protect market participants from anticompetitive behavior in the marketplace . . . 'plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior.'" *Elliott Indus. Ltd. P'ship v. BP America Prod. Co.*, 407 F.3d 1091, 1124–25 (10th Cir. 2005) (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990)). Such injury is assessed from the viewpoint of the consumer, *Vesom v. Atchison Hosp. Ass'n*, 279 F. App'x 624, 638 (10th Cir. 2008), not the competitor. *See, e.g.*, *GDHI Marketing LLC v. Antsel Marking LLC*, 416 F. Supp. 3d 1189, 1203 (D. Colo. 2019) (contrasting the alleged antitrust injury to consumers, higher prices, with the "real injury," the competitor's lost revenue and business value—which is not antitrust injury).

In her Recommendation, Judge Dominguez Braswell also concludes that Ms. Adamson's claims against Defendants should be dismissed for lack of antitrust standing because Plaintiff failed to plead antitrust injury. (Doc. # 55 at 10–17.) Specifically, Judge Dominguez Braswell first finds that Ms. Adamson has not suffered an injury to property because,

> the only property Plaintiff owns is a $450 purchase option. That option is subject to certain restrictions and requirements, but Plaintiff continues to possess the right to exercise her option. If the current market has made the option less attractive to Plaintiff, or if she cannot exercise the option due to her own financial circumstances, she can choose not to exercise it, but there has been no injury to her $450 property. Beyond the purchase option, Plaintiff has no other property interest. Any value Plaintiff might have realized after exercising the purchase option is not "property" that can suffer injury.

(*Id.* at 14–15) (footnotes omitted). In so finding, Judge Dominguez Braswell rejects Ms. Adamson's argument that she has any property rights to the equity or appreciation in the leased vehicle. (*Id.* at 14.)

Judge Dominguez Braswell also concludes that even if Ms. Adamson's inability to realize the "equity" in her lease could be considered injury to property, such injury is not harm to competition—in other words, it is not the type of harm antitrust laws were intended to prevent. (*Id.* at 15–18.) Rather, analogizing to *GDHI Marketing*, 416 F. Supp. 3d at 1203, and *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1073 (D. Colo. 2012), Judge Dominguez Braswell concludes that Ms. Adamson is "at most an aggrieved party to a contract, or a pseudo-competitor squeezed out of the used Audi market." (*Id.* at 17.) In other words, despite paying "lip service to an antitrust injury," higher prices for used Audis, the "real injury" in Ms. Adamson's

Complaint is her inability to make money off a car that she does not own. (*Id.*); *GDHI Marketing*, 416 F. Supp. 3d at 1203.

Upon careful review of the Objection, the Court identifies two arguments specific to Judge Dominguez Braswell's Recommendation regarding antitrust standing. First, as mentioned above, Ms. Adamson argues that the Recommendation fails to distinguish between assignment of the Lease during its pendency—which the Lease explicitly disallows (Doc. # 28-1 at ¶ 25(m))—and "assignment of property rights obtained when the lease is going to be paid off." (Doc. # 58 at 6.) She asserts this distinction is relevant because "if the point of the assignment is to accomplish a buyout of the lease, that does not impact the lessor's rights under the lease at all," as the lessor will have received all the benefits due to it. (*Id.*)

The Court disagrees that this is a material difference. The Lease, which Ms. Adamson agreed to, states that the lessee may not assign the lease without the lessor's prior written consent. (Doc. # 28-1 at ¶ 25(m).) The "purpose" of any assignment is immaterial so long as the Lease remained in effect. The Court acknowledges that the lessor would receive the agreed-upon buyout price whether Ms. Adamson exercises her purchase option with her own funds, or the Lease is assigned for the purpose of payoff. However, the explicit language of the Lease gives the lessor the right to deny that assignment. *See Nat'l Union Fire Ins. Co. of Pittsburg V. Dish Network, LLC*, 17 F.4th 22, 30 (10th Cir. 2021) (explaining that under Colorado law, "[t]he words of the contract should be given their plain meaning according to common usage, and strained

constructions should be avoided." (citing *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002)).

Second, Ms. Adamson argues that Judge Dominguez Braswell's "conclusion that the current owner of the Audi, and not the lessee, is entitled to appreciation incurred is not [sic] unsupported and contrary to law." (Doc. # 58 at 6.) In support, Ms. Adamson points to an article she attached to her Complaint which references equity/appreciation associated with leased vehicles. (*Id.* (citing Doc. # 28-6.))

The Court declines to reverse the Recommendation based on this argument. The burden is on Ms. Adamson to craft her complaint to state a claim for which relief may be granted. *See* Fed. R. Civ. P. 8(a)(2) (a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). Specifically, "[t]he burden to demonstrate antitrust standing is on the plaintiff." *JetAway Aviation, LLC v. Bd. of Cnty. Comm'rs of Cnty. of Montrose*, 754 F.3d 824, 832 n.7 (10th Cir. 2014) (Holmes, J., concurring) (citing *Abraham v. Intermountain Health Care Inc.*, 461 F.3d 1249, 1267 (10th Cir. 2006)). Judge Dominguez Braswell concluded Ms. Adamson has not plausibly pleaded that she is entitled to the leased vehicle's appreciation. (Doc. # 55 at 14); *Iqbal*, 556 U.S. at 678. The Court agrees. The article Ms. Adamson cites to is insufficient to alter this analysis because it does not allege that lessees possess rights to leased vehicle equity. (Doc. # 28-6 at 2–4.) Rather, it merely discusses various means by which lessees and

dealerships are both seeking to profit from the pandemic-induced shortage in used vehicles. *See generally* (Doc. # 28-1.)

In sum, Ms. Adamson's arguments appear to demonstrate a misunderstanding of legal property rights. As many law students learn, property is often described "as a 'bundle of sticks'—a collection of individual rights." *United States v. Craft*, 535 U.S. 274, 278 (2002) (citing B. Cardozo, Paradoxes of Legal Science 129 (1928) (reprint 2000); *Dickman v. Commissioner*, 465 U.S. 330, 336 (1984)). Ms. Adamson's Lease provided her with some common sticks, including the right to possess the Audi during the Lease period. *See generally* (Doc. # 28-1.) However, pursuant to the Lease's terms, the lessor—the legal owner of the Audi—retained other sticks in the property bundle. (*Id.* at ¶ 25(m)–(n).) The rights retained by the owner/lessor include the right to restrain both assignment of the lease, and transfer of the Audi. (*Id.*) Ms. Adamson simply has not plausibly alleged that she held a stick giving her the right to sell the Audi to a buyer of her choosing. As such she has not demonstrated injury sufficient to establish Article III or antitrust standing.

The Court has fully considered the record in this case and determines that even under *de novo* review, the Court would reach the same conclusion as Judge Dominguez Braswell, that Defendants' Motion to Dismiss (Doc. # 28) should be granted.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, it is ORDERED as follows:

- Plaintiff Portia Adamson's Motion for Leave to File Reply in Support of Objections to Magistrate Recommendations (Doc. # 61) is DENIED;

- Plaintiff's Objection (Doc. # 58) is OVERRULED;

- The January 12, 2023 Recommendation of United States Magistrate Judge (Doc. # 55) is AFFIRMED AND ADOPTED;

- Defendant Volkswagen Group of America, Inc. d/b/a Audi of America, Inc.'s "Rule 12(b)(1) and 12(b)(6) Motion to Dismiss the Complaint" (Doc. # 28), in which Defendant Audi of Colorado Springs joined (Doc. # 29) is GRANTED;

- Accordingly, all Plaintiff's claims are DISMISSED WITHOUT PREJUDICE.

- Should Ms. Adamson wish to amend her complaint, she shall file a motion for leave to amend together with a proposed amended complaint curing the deficiencies identified in this Order on or before April 27, 2023, otherwise her case will be dismissed with prejudice.

DATED:  March 27, 2023

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge